UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LATRESA M. CHEEK,

                      Plaintiff,                    **DECISION AND ORDER**

       v.

                                          1:18-CV-01455 EAW

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Latresa M. Cheek ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 10), and Plaintiff's reply (Dkt.11). For the reasons discussed below, Plaintiff's motion (Dkt. 9) is granted, the Commissioner's motion (Dkt. 10) is denied, and the matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed her application for SSI on March 4, 2015.  (Dkt. 8 at 15, 187).[1]  In her application, Plaintiff alleged disability beginning November 1, 2014, due to back pain and knee pain.  (*Id.* at 15, 188-89).  Plaintiff's application was initially denied on May 27, 2015.  (*Id.* at 15, 208-19).  At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Larry Banks on September 7, 2017.  (*Id.* at 15, 125-62).  Plaintiff appeared in Buffalo, New York, and the ALJ presided over the hearing from Alexandria, Virginia.  (*Id.*).  On December 12, 2017, the ALJ issued an unfavorable decision.  (*Id.* at 12-28).  Plaintiff requested Appeals Council review; her request was denied on October 19, 2018, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-8).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

## I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined

that Plaintiff had not engaged in substantial gainful work activity since March 4, 2015, the application date. (Dkt. 8 at 17).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "osteoarthritis of both knees, degenerative disc disease of the cervical, thoracic and lumbar spine; obesity; and affective disorders." (*Id.* at 18). The ALJ further found that Plaintiff's medically determinable impairments of hairline fracture in her right arm, diabetes, hypertension, and anxiety, were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.02, 1.04, and 12.04 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p. (*Id.* at 18-20).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with the additional limitations that Plaintiff:

> should not be required to stand more than thirty minutes before alternating to sitting for no more than thirty minutes. [Plaintiff] needs to be able to sit fifteen minutes before alternating to standing and stand fifteen minutes before alternating to sitting, as she performs work activity. [Plaintiff] should do no climbing of ropes, ladders, or scaffolds. [Plaintiff] can perform other postural movements such as stooping, on an occasional basis. [Plaintiff] should do no work around dangerous machinery or at unprotected heights. She is limited to performing unskilled work with no complex tasks. [Plaintiff] would be off task five percent of the workday.

(*Id.* at 20). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 27).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of information checker, document archiver, and systems monitor. (*Id.* at 27-28). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 28).

## II.  Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the RFC is not supported by medical opinion evidence. (Dkt. 9-1 at 11). Specifically, Plaintiff contends that the ALJ assessed her physical limitations by interpreting "raw medical data," and failed to account for the opinion of Jane Ippolito, Psy.D., that Plaintiff had moderate limitations dealing with stress. (*Id.* at 12-13). In response, Defendant contends that the assessed RFC is "extremely restrictive," and the ALJ was permitted to assess an RFC "that tracked no doctor's opinion in particular." (*See* Dkt. 10-1 at 7-9). With regard to the mental RFC, Defendant contends that the RFC supports Dr. Ippolito's assessment that Plaintiff "can appropriately deal with stress with moderate limitations," and the ALJ could have reached the mental RFC without a medical professional's advice. (*Id.* at 10-11). For the reasons set forth below, the Court finds that the RFC is not supported by substantial evidence, and this error necessitates remand for further proceedings.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly

correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

Here, the ALJ assessed a highly specific RFC that included sit/stand limitations, as well as additional exertional and non-exertional limitations. The ALJ explained how he arrived at Plaintiff's RFC:

> In sum, the above residual functional capacity assessment is supported by the entire record. Concerning physical functioning, specific exertional and postural restrictions are warranted based on the diagnostic and clinical evidence describing the claimant's degenerative changes in the spine and osteoarthritis of the knees (Ex. C11F, p. 23; C9F, p. 174, 181-182; 236-237 and 240). The claimant's weight, is taken into consideration and supports a conclusion that she can execute and sustain work activities within a reduced sedentary exertional range that allows for a sit/stand option requirement. Additionally, for those same reasons she is limited to only occasional posturals and no climbing of ropes, ladders or scaffolds; or work around dangerous machinery or unprotected heights. In addition to her depression, the claimant has also reported ongoing pain all of which would cause her to be off task five percent of the workday. Restricting the complexity of work to simple tasks takes into account the claimant's subjective allegations concerning concentration difficulties and memory problems (Ex. C4F, p. 9;

C6F). Viewing the evidence in a light most favorable to the claimant, however, a greater range of limitation is not warranted in light of the mental status findings.

(Dkt. 8 at 26-27). There are several problems with the ALJ's explanation of how he assessed Plaintiff's RFC. First, notably missing from the ALJ's explanation is any mention of medical opinion evidence. While the ALJ discussed the opinion evidence in the record earlier in the written determination (*see id.* at 25-26), the ALJ did not relate the findings of these medical professionals to the functional limitations in the RFC. The Court is cognizant that an RFC need not correspond with any particular medical opinion in the record. However, the ALJ may not fashion an RFC – particularly a highly detailed RFC, as the ALJ assessed in this case – without basing the assessed limitations on evidence offered by a medical professional. Here, the ALJ apparently based Plaintiff's "specific exertional and postural restrictions" on "diagnostic and clinical evidence describing the claimant's degenerative changes in the spine and osteoarthritis of the knees." (*Id.* at 26). He cites to evidence in the record, including a December 23, 2016 treatment note from Excelsior Orthopaedics, LLP (Ex. C11F, p. 23), and treatment notes from Jericho Road Family Practice (Ex. C9F), which include an imaging study report from Sisters of Charity Hospital, dated August 20, 2017, a treatment note from Excelsior Orthopaedics, dated June 27, 2017, and imaging reports from WNY Imaging Group, dated November 28, 2016, of Plaintiff's lumbar, cervical, and thoracic spine. None of these documents include an assessment of work-related functional limitations. Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's physical limitations, the ALJ may not rely on the record in determining the plaintiff's RFC. *See*

*Trippett v. Commissioner*, No. 16-CV-908-MJR, 2018 WL 4268917, at *4 (W.D.N.Y. Sept. 7, 2018); *see also Quinto*, 2017 WL 6017931, at *12 ("[w]here the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual capacities . . . the Commissioner may not make the connection himself.") (internal quotations and citations omitted) (alteration in original).

Further, the ALJ assessed a sit/stand limitation, which provides that Plaintiff "should not be required to stand more than thirty minutes before alternating to sitting for no more than thirty minutes," and also required that Plaintiff "needs to be able to sit fifteen minutes before alternating to standing and stand fifteen minutes before alternating to sitting, as she performs work activity." (Dkt. 8 at 20). None of the opinion evidence cited and discussed by the ALJ speaks to Plaintiff's specific limitation for alternating between sitting and standing, other than the opinions offered by Lidia Yemchuk, PA-C and Tanesha Leonard, FNP, that Plaintiff has moderate limitations for walking and standing. (*See id*. at 25-26 (discussing opinion evidence offered by Dr. Schwab, Dr. Miller, PA-C Yemchuk, and FNP Tanesha Leonard, regarding Plaintiff's physical functional limitations)). The RFC limitation for alternating between sitting and standing is at odds with Plaintiff's hearing testimony that she can sit for "5 minutes at the most" before experiencing pain. (*Id*. at 137). Further, during the hearing, Plaintiff asked the ALJ if she could be permitted to change positions, from sitting to standing. (*Id*.).

"A very specific RFC assessment – such as the specific amount of time a claimant can spend on certain activities – must be based on evidence in the record, not on 'the ALJ's own surmise.'" *Heckman v. Commissioner*, No. 18-CV-6032, 2019 WL 1492868, at *3

(W.D.N.Y. Apr. 4, 2019) (quoting *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014)). "So when the record provides no support for the specific amount of time that a claimant can sit or stand without relief, a specific finding toward that end is not supported by substantial evidence." (*Id*.). In *Heckman*, the Court found that the ALJ's assessment that the plaintiff "be allowed to stand for one to two minutes after sitting for approximately 60 minutes and be allowed to sit for one to two minutes after standing for approximately 15 minutes" was improper because it was not supported by any evidence in the record. *Id*. at *4. The Court explained that although a doctor had opined that the plaintiff was moderately limited in standing, walking, and sitting for "a long time," the opinion "sa[id] nothing about *how long* [the plaintiff] could sit or stand without moving." *Id*. Like the medical record in *Heckman*, Plaintiff's records do not contain opinion evidence offering a functional assessment of her limitations for changing positions during the workday. *See also Cosnyka*, 576 F. App'x at 46 (orthopedic examiner's opinion that the plaintiff required "regular comfort breaks" but did not indicate the length of those breaks, did not support the ALJ's assessed limitation that the plaintiff could be off-task six minutes per hour); *Silkowski v. Commissioner*, No. 18-CV-6727, 2020 WL 1493951, at *6 (W.D.N.Y. Mar. 27, 2020) (where doctor opined that the plaintiff required "frequent opportunities to alternate between sitting, standing and walking," the ALJ erred in assessing an RFC requiring the plaintiff to change position every 60 minutes for up to five minutes without leaving the workstation, because the ALJ "provided no . . . tether between 'frequent' and 'every 60 minutes for up to 5 minutes.'"). If the ALJ believed that a sit/stand limitation was necessary given Plaintiff's physical impairments, he should have obtained medical

opinion evidence supporting such a limitation, particularly given Plaintiff's testimony that she is not able to sit for more than five minutes.

Finally, the ALJ erred in his assessment of the mental RFC.  As explained above, the ALJ determined that Plaintiff had a severe mental limitation of "affective disorders." (Dkt. 8 at 18).  To account for this severe impairment, the ALJ limited Plaintiff to "performing unskilled work with no complex tasks," and permitted Plaintiff to be "off task five percent of the workday."  (*Id*. at 20).  The ALJ explained the limitations pertaining to Plaintiff's mental functioning took into account the opinion of Janine Ippolito, Psy.D., whose opinion he gave "great weight."  (*Id*. at 24, 26).  Dr. Ippolito assessed Plaintiff with the following limitations:

> The claimant presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others with no evidence of limitations.  She can [maintain] attention and concentration with mild limitations.  She can appropriately deal with stress with moderate limitations. These limitations are due to her current emotional distress and distractibility.
>
> The results of the present evaluation appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.

(*Id*. at 441).  With regard to the RFC assessment, the ALJ explained that "[r]estricting the complexity of work to simple tasks takes into account the claimant's subjective allegations concerning concentration difficulties and memory problems."  (*Id*. at 26-27).  While this restriction accounts for both Plaintiff's reports and Dr. Ippolito's opinion that Plaintiff has mild limitations for maintaining attention and concentration, it does not account for Dr. Ippolito's opinion that Plaintiff has moderate limitations for dealing with stress.  The ALJ

may not purport to give a medical opinion "great weight," and then discount portions of that opinion without any explanation. *See Jackson v. Commissioner*, No. 16-CV-6183 (KAM), 2019 WL 7283518, at *7 (E.D.N.Y. Dec. 27, 2019) ("It is legal error for the ALJ to create an RFC which conflicts with portions of a medical source statement that was accorded great weight without explaining the inconsistency."). Defendant's argument that the ALJ interpreted Dr. Ippolito's opinion to mean that Plaintiff could appropriately deal with stress and did not require any limitations for this impairment is not supported by the record. A plain reading of Dr. Ippolito's opinion reveals that she concluded that Plaintiff requires moderate limitations to appropriately deal with stress in a work environment. (*See id*. at 441 ("She can appropriately deal with stress *with moderate limitations*.")) (emphasis added). In any event, Defendant's statement regarding why the ALJ did not adopt any stress-related limitations amounts to a *post hoc* rationalization of agency action and cannot serve as a substitute for the ALJ's findings. *See Hall v. Colvin*, 37 F. Supp. 3d 614, 626 (W.D.N.Y. 2014) (rejecting Commissioner's attempt to justify the ALJ's failure to incorporate a treating physician's opinion into his RFC); *see also Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999) (a reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action).

In sum, the ALJ assessed portions of the physical and mental RFC based on his own interpretation of the medical record, rather than relying on evidence relating to Plaintiff's functional limitations in a work settling. Accordingly, remand is required. On remand, should the ALJ again determine that Plaintiff is not disabled, he should ensure that the record contains evidence on which he may properly base any assessed functional

limitations.  Further, the ALJ should adequately explain how this evidence supports the assessed limitations.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 9) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 10) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.


ELIZABETH A. WOLFORD
United States District Judge

Dated:  April 28, 2020
        Rochester, New York